Neama Rahmani (State Bar No. 223819)
Ronald L. Zambrano (State Bar No. 255613)
   *ron@westcoasttriallawyers.com*
WEST COAST TRIAL LAWYERS, APLC
350 South Grand Avenue, Suite 3350
Los Angeles, California 90071
Telephone: (213) 927-3700
Facsimile: (213) 927-3701
filings@westcoasttriallawyers.com

Attorneys for Plaintiff
JOSH AREBALO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSH AREBALO,<br><br>        Plaintiff;<br><br>  vs.<br><br>APPLE, INC., a California Corporation; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>1) VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990; AND<br><br>2) WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY<br><br>**DEMAND FOR JURY TRIAL** |

      COMES NOW the Plaintiff, JOSH AREBALO, (who hereinafter shall be referred to as the "Plaintiff" or as "AREBALO"), who hereby alleges the following:

//

//

//

---

COMPLAINT AND DEMAND FOR JURY TRIAL

1

## JURISDICTION AND VENUE

1. Plaintiff respectfully submits that jurisdiction of this Court is properly invoked under 28 U.S.C. § 1331 as Plaintiff seeks redress for violations arising under the Americans with Disabilities Act of 1990 ("ADA").

2. Plaintiff respectfully requests this Court exercise supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367, as said state law claim and the federal claim arise from a common nucleus of operative facts such that Plaintiff would ordinarily be expected to try them all in a single judicial proceeding. (*Ibid*; see also *United Mine Workers v. Gibbs* (1966) 383 US 715, 725.)   In the alternative, Plaintiff respectfully requests this Court take jurisdiction over the state law claim pursuant to 28 U.S.C. § 1332(a), in that the parties are citizens of different states and the amount in controversy is in excess of $75,000.00.

3. Venue is proper in this judicial district by virtue of 28 U.S.C. § 1391 because, among other things, a substantial part of the acts or omissions complained of occurred in this judicial district and because one or more of the defendants reside in this judicial district. Specifically, Defendant Apple, Inc.'s principle place of address is One Apple Parkway, Cupertino, California 95014.

## PLAINTIFF

4. At all times herein mentioned, Plaintiff Josh Arebalo was a resident of the State of California and is currently a resident of the State of Ohio.  While employed by Defendant Apple, Inc, Plaintiff was a resident of California from 2012 to July 2017, and then a resident of the State of Washington from July 2017 through the end of his employment in December 2017.

5. Plaintiff is a military veteran, diagnosed with Post-Traumatic Stress Disorder ("PTSD"), and carpel tunnel syndrome with associated pain in his upper extremities. Consequently, while employed by Defendant Apple, Inc. Plaintiff qualified as a disabled person under the ADA and entitled to its protections and remedies.

## **DEFENDANTS**

6. Defendant Apple Inc., (hereinafter referred to as "Apple" or "Defendant") is and at all times herein mentioned has been a California corporation with the capacity to sue and to be sued, with a principal place of business located at One Apple Parkway, Cupertino, California 95014.

7. Plaintiff is informed and believes and thereon alleges that each of the Defendants herein were at all times the agent, employee, or representative of each remaining Defendant and were at all times herein acting within and outside the scope and purpose of said agency and employment. Plaintiff further alleges that as to each Defendant, whether named, or referred to as a fictitious name, said Defendants supervised, ratified, controlled, acquiesced in, adopted, directed, substantially participated in, and/or approved the acts, errors, or omissions, of each remaining Defendant.

8. The true names and capacities of the Defendants named herein as DOES 1 through 10, inclusive, whether individual, corporate, partnership, association, or otherwise, are unknown to Plaintiff who therefore sues these Defendants by such fictitious names. Plaintiff will request leave of court to amend this Complaint to allege their true names and capacities at such time as they are ascertained.

//
//
//

**FACTUAL ALLEGATIONS**

9. In 2012, Plaintiff, a military veteran and a disabled person, began employment at Apple, Inc., as a Technical Support Phone Advisor. In or about 2014, Plaintiff was promoted to the position of Technical Support Team Supervisor. A primary and essential function of Plaintiff's job duties is typing for large portions of every work day.

10. In or about 2015, Plaintiff began suffering pain in his hands, wrists and arms and was referred by Defendant Apple to a company doctor which diagnosed Plaintiff with carpel tunnel syndrome and instructed Plaintiff to stretch every hour he was working. Plaintiff did as instructed and found that these stretch breaks did, in fact, relieve the pain.

11. Later in 2015, Plaintiff was awarded $15,000 of Restricted Stock Unit package, which is designed to retain high performing employees at Defendant Apple, such as the Plaintiff.

12. In or about the beginning of 2016, Plaintiff incorporated his stretch breaks he began taking the year before into his daily schedule: 10 minutes, once an hour. Prior to this, these breaks were not actually reflected on his schedule.

13. Later in 2016, Plaintiff was awarded a combination of Restricted Stock of $3,000 in addition to another $5,000 cash bonus, which is designed to reward high performing contributors at Defendant Apple, such as the Plaintiff.

14. In February 2017, Plaintiff was recommended and thereafter selected to manage a more senior technical support team, revolving around complex issues, that reported to a new supervisor, David Pratt. Mr. Pratt's supervisor s Justin Bishop. Thereafter,

Plaintiff requested Mr. Bishop to consider implementing "microbreaks" each hour to work schedules for employees under Plaintiff's supervision that perform repetitive motion in doing their tasks. This request was in conformity with recommendations found on Defendant Apple's Internal Ergonomics website designed to prevent injury.

15. On May 1, 2017, Plaintiff's received an email from Mr. Pratt approving Plaintiff's move from California to Washington. This move would not take place until July 2017.

16. On May 18, 2017, Mr. Pratt was requested by Mr. Bishop to select his best supervisor and to offer them a more demanding role in another organization that had a vacant supervisory position. Mr. Pratt offered this position to Plaintiff.

17. In or about early July 2017, Plaintiff informed Mr. Pratt that Plaintiff cannot work due to pain in hands and that Plaintiff needed five days off to recover. This pain was a result of Plaintiff the process of moving his personal belongings from California to the state of Washington.

18. Later in July 2017, Plaintiff and Mr. Pratt met over FaceTime where Mr. Pratt gave Plaintiff a Performance Improvement Plan ("PIP") on a pretextual basis, which Plaintiff rebutted with documentary evidence.

19. During this same FaceTime meeting, Mr. Pratt first noticed Plaintiff's stretch breaks (which have existed since 2015 in some form without incident) and told Plaintiff he can no longer take them. Plaintiff informed Mr. Pratt of his carpel tunnel diagnosis and the need for the stretch breaks to avoid debilitating pain that would prevent him from typing. Plaintiff further told Mr. Pratt that Plaintiff has been taking these breaks, once an hour, in some form or another since 2015, without any adverse effect on Plaintiff's work performance. Despite Plaintiff's protestation, Mr. Pratt did not

1. change his mind about prohibiting Plaintiff from taking these stretch breaks.

20. Immediately following this July 2017 FaceTime meeting, Mr. Pratt gave Plaintiff his annual performance evaluation with a rating of "Needs Improvement." Prior to Mr. Pratt's July 2017 evaluation, Plaintiff never received disciplined or sub-par reviews.

21. In or about September 2017, Mr. Pratt bizarrely disciplined Plaintiff for "misconduct" for supposedly failing to get approval for the move to Washington despite getting approval for that very move on May 1, 2017.

22. Also in September 2017, Plaintiff became aware that a group of employees had complaints about working conditions (including pain in their hands from typing) with plans to file a grievance directly with Defendant Apple's CEO, Tim Cook. Plaintiff advised the group to follow Apple's grievance procedures and offered to represent the group at a meeting with Senior Management that Plaintiff was planning. The group accepted Plaintiff's offer.

23. In or about October 2017, Plaintiff requested a meeting with Mr. Bishop to discuss the employee grievances regarding Mr. Pratt, including unresolved issues related to working conditions causing employees physical pain, stress and anxiety that Mr. Pratt was ignoring, as well as Plaintiff's concerns Mr. Pratt was discriminating against Plaintiff based on disability and request/denial of the stretch breaks accommodation.

24. Following Plaintiff's request to Mr. Bishop, on or about November 3, 2017, Plaintiff was issued another PIP by Mr. Pratt on a pretextual basis. Mr. Pratt assigned a Mentor as part of this PIP. The PIP was set to expire on or about December 2, 2017.

//
//

25. Despite Mr. Pratt's supposed dissatisfaction with Plaintiff's ability to supervise as documented in the second PIP, Mr. Pratt then directed that Plaintiff supervise an additional team.  Effectively, Plaintiff's job duties were doubled for the last three weeks of November 2017.

26. On or about November 28, 2017, Plaintiff met with Mr. Bishop to discuss complaints of the employees who initially wanted to go to CEO Tim Cook.  Mr. Bishop's response was "I don't need this shit," then directed Plaintiff to "collaborate" with Mr. Pratt on specific employee complaints and requested Plaintiff to follow-up with Mr. Bishop at a later time about Plaintiff's complaints regarding Mr. Pratt.  After this meeting, Plaintiff sent an electronic invite to Mr. Bishop for a follow-up meeting in January to discuss the complaint about Mr. Pratt, which Mr. Bishop accepted.

27. Later the same day as Plaintiff's meeting with Mr. Bishop, Mr. Pratt decided to conduct an uncommon audit of Plaintiff's team performance for both Plaintiff's initial and additional team.

28. On or about December 5, 2017, Mr. Pratt terminated Plaintiff on the pretextual basis of Plaintiff's failure to follow the PIP.  However, Plaintiff's assigned Mentor stated that Plaintiff completed the PIP very well.   Plaintiff is informed and believes that his termination was discriminatory and retaliatory in nature, in response to Plaintiff's disability, request for accommodation and complaint of his accommodation being unreasonably denied.

## **EXHAUSTION OF ADMINISTRATIVE REMEDY**

29. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") pursuant to 42 U.S.C. § 2000e-5, subsec. (e)(1),

alleging Defendant Apple violated Plaintiff's rights under the American with Disabilities Act ("ADA"). The EEOC issued a right-to-sue letter on March 5, 2019.

# FIRST CAUSE OF ACTION
## VIOLATION OF AMERICANS WITH DISABILITIES ACT
### (42 U.S.C. § 12101, et seq.)
### (AREBALO Against All Defendants)

30. Plaintiff realleges and incorporates by reference, as though fully set forth herein, each and every allegation set forth in paragraphs 1 through 29 above.

31. Plaintiff suffers from a disability within the meaning and scope of 42 U.S.C. § 12102. Accordingly, Plaintiff is a member of the class of persons protected by 42 U.S.C. § 12112 and § 12203, which make it unlawful for a covered entity, like Defendant Apple herein, to discriminate against an individual with a disability in employment, fail to provide reasonable accommodations to persons with disabilities, and retaliate against any individual who opposes any unlawful practices.

32. As alleged herein, Apple discriminated against Plaintiff because of his disability, failed to provide reasonable accommodations to plaintiff, failed to engage in the interactive process and retaliated against plaintiff for his complaints about disability discrimination.

33. The acts and omissions of defendants, and each of them, as aforesaid, were in violation of 42 U.S.C. § 12101, et seq. Said statutes impose certain duties upon defendants, and each of them, concerning discrimination against persons, such as plaintiff, on the basis of physical disability. Said statutes were intended to prevent the type of injury and damage set forth herein. Plaintiff is a member of the class of

persons intended to be protected by said statutes.

34. By the aforesaid acts and omissions of defendants, and each of them, plaintiff has been directly and legally caused to suffer actual damages including, but not limited to, loss of earnings, medical expenses, attorney's fees, costs of suit, and other pecuniary loss not presently ascertained.

35. As a further direct and legal result of the acts and conduct of defendants, and each of them, as aforesaid, plaintiff has been caused to and did suffer and continues to suffer severe physical injuries, sickness and emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, pain, discomfort, depression and anxiety. The exact nature and extent of said injuries is presently unknown to plaintiff.

36. Plaintiff is informed and believes and thereon alleges that Defendant Apple Inc., by and through its managers, officers, and/or directors committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring plaintiff and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of plaintiff's rights. Moreover, defendants and their managers, officers, and/or directors authorized or ratified the wrongful conduct of their employees and/or are personally guilty of oppression, fraud, or malice. As such, plaintiff is entitled to recover punitive damages from defendants under federal law in an amount according to proof.

37. As a result of defendants' unlawful as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of suit as provided in 42 U.S.C. § 12205.

//

//

//

## SECOND CAUSE OF ACTION

### (Wrongful Termination in Violation of California Public Policy)

### (AREBALO Against All Defendants)

38. The allegations of paragraphs 1 through 37 are re-alleged and incorporated herein by reference as though set forth at length.

39. At all times herein mentioned in this complaint, California Government Code Section 12940 et seq. (Fair Employment and Housing Act of California ("FEHA")) was in full force and effect and were binding on the Defendants and the Defendants were subject to its terms, and therefore Defendant was required to refrain from violations of public policy, including discriminatory and/or retaliatory actions against Plaintiff on account of his disability and requests for accommodation.

40. As set forth in more detail above, Plaintiff was given two PIPs based on pretext, was reprimanded on a false pretense, was denied reasonable accommodation without any interactive process, and was ultimately terminated on a pretextual basis on December 5, 2017, all due to Defendant Apple's discriminatory and retaliatory motive on the basis of Plaintiff's disability, need for an accommodation and complaints of the denial of the reasonable accommodation.

41. Defendants' above described conduct is in violation of various statutes and decisional law of California, including, but not limited, to California's FEHA.

42. Plaintiff has suffered and continues to suffer general, consequential and special damages including but not limited to substantial losses in earnings, other employment benefits, physical injuries, physical sickness, as well as emotional distress, plus medical expenses, all to his damage in an amount according to proof.

43. Said termination was wrongful and justifies the imposition of punitive damages since the termination was against California's public policy. Defendants intentionally discriminated against Plaintiff on account of his protected activity and classification, and in doing so, Defendants acted maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiff. Based upon the foregoing, Plaintiff is entitled to recover punitive damages from Defendants and each of them, in an amount according to proof.

## **PRAYER**

WHEREFORE Plaintiff demands judgment as follows:

1. For special damages according to proof, including but not limited to loss of earnings in excess of $75,000.00, deferred compensation, medical benefits and other employment benefits;

2. For general damages, including but not limited according to proof;

3. For prejudgment interest on lost wages and benefits;

4. For costs incurred by Plaintiff, including reasonable attorneys' fees and costs of suit, in obtaining the benefits due Plaintiff and for violations of the American with Disabilities Act, as set forth above; and

5. For such other and further relief as the court deems just and proper.

//
//

Dated: May 31, 2019                              WEST COAST TRIAL LAWYERS, APLC

By: /s/ Neama Rahmani
Neama Rahmani, Esq.
Ronald L. Zambrano, Esq.
Attorney for Plaintiff
JOSH AREBALO

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury.

Dated: May 31, 2019                              WEST COAST TRIAL LAWYERS, APLC

By: /s/ Neama Rahmani
Neama Rahmani, Esq.
Ronald L. Zambrano, Esq.
Attorney for Plaintiff
JOSH AREBALO