Josh Arebalo
2452 North Bogus Basin Rd
Boise, Idaho 83702
Telephone: (415) 516-2553
joshworksit@icloud.com
*pro se*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSH AREBALO, | Case No.: 5:19-cv-03034-EJD |
| Plaintiff; | PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; |
| vs. | |
| APPLE, INC., a California Corporation; and DOES 1 through 10, inclusive, | Complaint filed: May 31, 2019 |
| Defendants . | Trial Date: none set |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff Josh Arebalo hereby opposes Defendant Apple's ("Defendant") Motion for Summary Judgment. Plaintiff respectfully submits that upon Plaintiff's Rule 56 Statement of Material Facts as to Which There is No Genuine Issue to be Tried, dated February 16, 2021; the Declaration of Heather Lehman, sworn to February 16, 2021; and Plaintiff's Memorandum of Law in Opposition of Defendant's Motion for Summary Judgment, Plaintiff is entitled to have facts yet to be determined decided by a Jury.

Plaintiff submits evidence that the reason for his termination, underpaid employees, was pretextual. The evidence supporting a finding of liability is contained in Plaintiff's Rule 56 Statement, and in the Declaration of a former direct report of Defendant David Pratt found in a portion of the Declaration of Heather Lehman.

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

I.     STATEMENT OF ISSUES TO BE DECIDED………………………4

3

II.    INTRODUCTION…………………………………………………4

4

III.   STATEMENT OF FACTS………………………………………5

5

A. Plaintiff's Performance at Apple…………………………………5

6

B. Discrimination at Apple……………………………..…………..9

7

C. Apple's Description of Plaintiff is False and Misleading……………11

8

IV.  LEGAL STANDARD……………………………………………13

9

V.   LEGAL ARGUMENT

10

A. Plaintiff's Complaint is not Time Barred…………………………14

11

B. A Totality of The Circumstances Gives Rise Retaliation

12

And the Prima Facie Claim…………………………………………15

13

C. Defendant Offers No Evidence of Alleged Concerns in April 2017

14

Prior to Plaintiff's Complaint to Justin Bishop………………………15

15

D. False Exculpatory Statements……………………………………..16

16

E. Apple's Reason for Termination is Fake and is Affirmative

17

Evidence of Guilt……………………………………………………17

18

F. Apple Admits it Failed to Accommodate and Engage in the

19

Interactive Process…………………………………………………21

20

G. Despite Defendant's Discriminatory Intent, But-For, Should

21

Be Determined by a Jury…………………………………………..22

22

H. California's Long Arm Jurisdictional Statue is Coextensive

23

With Federal Due Process Requirements……………………………23

24

I.  Jurisdiction………………………………………………………24

25

VI.   CONCLUSION

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Case No.  5:19-cv-03034-EJD

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                              **Page**

*Hagen v. Hickenbottom*                                                    14
     41 Cal.App.4th 168, 187-188 (1995)

*Rice v. Clark*                                                            14
     28 Cal.4th 89,96 (2002)

*Mamou v. Trendwest Resorts, Inc*                                          14
     165 Cal.App.4th 289, 722 (2008)

*Aguilar v. Atlantic Richfield Co*                                         14
     25 Cal.4th 826, 849 (2001)

*Yanowitz v. L'Oreal USA, Inc*                                             14
     36 Cal.4th 1028 [32 Cal.Rptr.3d 436 (2005)

*Arteaga v. Brink's, Inc.*,                                                15
     163 Cal. App. 4th 327, 353-54 (2008)

*Donchin v. Guerrero*                                                      16
     34 Cal.App.4th 1832 [41 Cal.Rptr.2d 192] (1995)

*McDonnell Douglas Corp. v. Green*                                         19
     411 U.S. at 802 (1973)

*Matthews v. Ocean Spray Cranberries, Inc*                                 19
     686 N.E.2d at 1312- 14 (1997)

*Tex. Dep't of Community Aff. v. Burdine*                                  19
     450 U.S. 248, 253-54 (1981).

*Gu v. Boston PZSolice Dep't*,                                             19
     F.3d 6, 11 (1st Cir. 2002)

*Prilliman v. United Air Lines, Inc*                                       21
     supra, 53 Cal.App.4th at pp. 950-951

*Panavision Int'l, L.P. v. Toeppen*                                        23
     141 F.3d 1316, 1320 (9th Cir. 1998)

*Rocke v. Canadian Auto. Sport Club*                                       23
     660 F.2d 395, 398 (9th Cir. 1981).

Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,                           24
     223 F.3d 1082, 1086 (9th Cir. 2000).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

## I.   STATEMENT OF ISSUES TO BE DECIDED

Plaintiff moves this Court for an order denying Apple's Summary Judgment for the foregoing reasons (1) totality of the circumstances of a pattern of systemic retaliation exists (2) false exculpatory statements constitute affirmative evidence that Apple terminated Plaintiff because of Plaintiff's disability (3) Apple's reason for termination is false and is affirmative evidence of guilt.

A jury is needed to be the trier of fact in understanding whether Plaintiff was subjected to disparate treatment, held to the same standards as those similarly situated.

## II.   INTRODUCTION

Defendants Apple, Inc. ("Defendant") is not entitled to summary judgment because they failed to meet their burden of showing that undisputed material facts entitle them to judgment as a matter of law, and that Plaintiff Josh Arebalo ("Plaintiff") cannot present evidence establishing a genuine issue of fact.

Plaintiff contends that Apple violated the Americans with Disabilities Act and violated the California Fair Employment and Housing Act ("FEHA") by discriminating against him on the basis of disability, retaliation, and failure to accommodate and engage in the interactive process.

Plaintiff submitted a Motion for Leave to File First Amended Complaint .  The Motion seeks to add causes of action and to clarify the reasoning for Retaliation in the Second Cause of Action that previous counsel did not address and Plaintiff was unaware of his Original Complaint having deviated from Counsel's agreement with Plaintiff. Rightfully so, Plaintiff believes that the merits of this case should not be determined by the breakdown in agreement and relationship of prior counsel but on the facts that are the foundation of this complaint.

Summary judgment is precluded because there exists disputes of material facts as to the following: (1) Whether a totality of the circumstances gives rise to retaliation (2) despite the discriminatory intent should be tried by a jury (3) whether Defendant engaged in the interactive process to explore (4) failed to reasonably accommodate (5) retaliated

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

1   for Plaintiff's OSHA complaint.

2        Defendant's motion seeking summary judgment should be denied because

3   Defendants fail to meet their initial burden.   Further, Plaintiff introduces ample evidence

4   to demonstrate that there are genuine issues of material fact for trial.

5        Plaintiff was "fighting the good fight." as one of his employees called it.  Thanking

6   Plaintiff for being one of the only supervisors with the courage to push back on the

7   working conditions for Tier 2 Chat Support.  Plaintiff's "Top-Guns" loved coming to work

8   for him and just weeks before he was terminated saw one of them write to Plaintiff,

9   "Forgive me in advance for putting you on the spot on this one.  You changed how I look

10  at my work now.  I wanted to be sure to let someone know that I know more now because

11  of my Manager's unwavering ability to go the extra mile for us.  I don't often do things like

12  that.  Just felt like you deserve to be noticed for your hard work.  I don't think Managers

13  really get the praise they deserve especially one like you."  This sentiment is only reflected

14  more in the Survey the "Top Guns" team used to rate Plaintiff's previous month giving him

15  the highest coaching remarks amongst his peers.

16       Plaintiff appreciates this Court and looks forward to seeing the truth shed light on

17  discrimination occurring even within the best and most loved companies, like Apple;

18  results of perceptions and bias that go unchecked when business priorities like profit and

19  bottom-lines become a higher value than the most important business asset, its' people.

20  **III.   STATEMENT OF FACTS**

21       **A.  Plaintiff's performance at Apple**

22       Plaintiff worked from home as a resident of the state of California during the year

23  2016 through end of June 2017.   After June 2017 Plaintiff moved to Ocean Shores

24  Washington and became a resident of Washington.   At all times during Plaintiff's

25  employment at Apple, Plaintiff used the AppleConnect VPN software to connect to

26  Apple's Cupertino headquarters remotely in-order to perform all of his work duties

27  remotely.

28       Plaintiff was a top that was consistently rated as "Achieved Expectations" on annual

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

performance evaluations.   Apple defines the rating of Achieved Expectations for performance that "Consistently performed at the highest level expected for the role".

Plaintiff was selected alongside other top-performing Tier 1 Team Mangers to "shake up" Tier 2 and an effort to drive performance.   Soon after selection in February 2017, Plaintiff began to report to David Pratt.

During initial months reporting to David Pratt Plaintiff became aware of management inconsistencies.   Plaintiff came to this conclusion by meeting with employees and asking them questions about managing complaints of pain etc.   Plaintiff discovered discrimination occurring that was directed to a specific group of employees with stress and repetitive motion injuries.   The injuries were the result of manual typing and Apple's "three chats at once" chat expectations where employees had to support three live customers via chat at once..

Plaintiff began to raise concerns with management including Justin Bishop who David Pratt reported to directly because Plaintiff understood the importance of preventing injury.   Plaintiff is a Navy Veteran and was first injured while enlisted.   Reducing risk by taking breaks from the repetitive task was likely the most important preventative measure for injuries.

Plaintiff had been performing Stretch Breaks in some manner since 2015 after suffering an injury at work related to repetitive motion and being directed to an occupational health care doctor by Apple.   Plaintiff received a reasonable accommodation when he returned to work with the restriction of requiring stretch breaks each hour.   Apple accepted the Plaintiff's return with the stretches and began to accommodate Plaintiff..

Plaintiff was informed at a All Managers Meeting that AppleCare Chat leadership requested the removal of information to prevent injury from its' internal ergonomics website so that the socialization of the information would not occur and impact the readiness of the Chat line-of-business.. (Lehman Decl.)

After finding this information out, Plaintiff raised his concern to Justin Bishop requesting stretch breaks be implemented directly into schedules for employees (in a

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Case No.  5:19-cv-03034-EJD

project with the scheduling department), Plaintiff had all scheduling department projects he was currently assigned removed and his performance evaluation stating he failed to meet the objectives of the project even though Plaintiff has documentary evidence that demonstrates Plaintiff completed the project on time (See Arebalo decl., at ARE00461), with David Pratt even thanking the Plaintiff.   David Pratt also falsely documents that Plaintiff failed another project for Kimberly Bertholet, yet Plaintiff has documentary evidence that shows again, he did not (See Arebalo Decl., at ARE00432).

David Pratt includes other false information in Plaintiff's annual performance review, David Pratt came to the conclusion that Plaintiff, after just taking a more challenging role in February 2017, somehow for the period of March 2017 – May 31, 2017 completely failed in his duties without any explanation.  Afterall, Plaintiff was in some fashion promoted in February 2017 when he began reporting to David Pratt.  David Pratt's construction of Plaintiff's performance review simply demonstrates David's frame of mind towards Plaintiff after working with him just a few short months.

In November 2017, Plaintiff plans a meeting with Justin Bishop in response to a suicide threat and hospitalization of an employee in October.   Plaintiff felt OSHA violations regarding reporting employee complaints of pain were allowing for employee's to be overlooked and the task of mitigating injury as part of Apple's general duty had failed.  Justin Bishop and Plaintiff agreed to provide a sounding board to the Tier 2 employees organizing to complain to Tim Cook (See Arebalo decl. Ex A at ARE00481) as a result of the meeting between Justin and Josh on November 28, 2017.  After Plaintiff's meeting with Justin Bishop, he met with David Pratt.  David Pratt and Plaintiff agreed to a specific number of employees and selected several for a meeting to be heard on their complaint.  Plaintiff then met with these employees and notified them of the plan.  A mere few days later, Plaintiff was terminated.

The employees that were selected, never attended a meeting to be heard.  Justin Bishop and David Pratt used Plaintiff's termination to silence the employees from complaining.  Plaintiff's contemporaneous notes from his meeting with Justin and then

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

David and Casey Nugent – Senior Managers at Apple.  Plaintiff's peers had heard that Plaintiff planned a meeting with Justin and wanted to provide feedback in an "Approachability" meeting with Plaintiff.  (See Arebalo Decl., at ARE00425)

Soon after this meeting where Plaintiff requested that Apple implement these breaks and shared in the importance of them as well and how they benefit the Plaintiff. Plaintiff told Justin he thought it was unfair what Apple had done by hiding the information.  Plaintiff was told the request was too complicated".  And, it never was completed.

Up until this point Plaintiff had only been onboard with David Pratt as his manager for about 3 months. Those 3 months are usually considered a "too new to review" period in terms of performance reviews.  What this means is that if performance is being reviewed that the first 90 days is seen as a grace period of adjustment for the employee.  It was standard practice to not place a lot of weight in these months for reviews.

David Pratt determined that Plaintiff's performance had deteriorated so much that he now was not achieving expectations in his current role.  Despite having just been promoted and given a Tier 2 team.  David Pratt never once criticizes or expresses dissatisfaction with Plaintiff's performance during the review period up till May 31, 2017. No evidence has been offered to demonstrate that since Plaintiff began in Tier 2 through May 31, 2017, documentary evidence or otherwise that shows the annual performance review Plaintiff received was justified.  At the time Plaintiff accepted it, he did so with the assurance from David Pratt that diligence was performed and should evidence come up to the contrary, Apple HR would assist.

The negative performance review was detrimental to Plaintiff's position, reduced his earnings, and prevented him from additional opportunities for professional development.   The review came after Plaintiff complained to Justin Bishop and Casey Nugent regarding the removal of information to prevent injury.  Additionally, Plaintiff's twin brother had just interviewed with Justin Bishop and told Plaintiff that Justin or Justin and David Pratt both used medical information about him in order to make a decision to

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

rehire.  Plaintiff's' brother returned from an extended medical leave of absence only to find his position had been filled.  Apple could not find a position for Plaintiff's brother within the company.  Plaintiff heard that Apple thought he was gamming the system somehow due to his being able to move across the country while stating he could not work.  Plaintiff does not speculate much on the topic.

Plaintiff believes that he suffered discrimination as a result of having a disability and speaking up about discrimination because it was going to cost money to address and the chat department was already being heavily scrutinized for not performing well, having much, much lower results than anticipated and  costing more than anticipated.

Retaliatory and discriminatory conduct from David Pratt continued in one form or another throughout the months.  Plaintiff saw the overt disparate treatment and began to collect the performance data from employees on his team similarly situated but being treated differently.  Plaintiff is so well prepared for this case for that reason, six months prior to termination, Plaintiff looked at his wife and said, "David Pratt is going to attempt a coup on me!" after Plaintiff could not get David Pratt to acquiesce to accepting his excuse regarding carpal tunnel and his hands hurting.  Plaintiff believes that the chat department began to discriminate against carpal tunnel employees and mental health employees due to the sudden and sharp increase in cases that occurred when triple chats became an expectation.  Contact centers like AppleCare Chat use the phrase "avoidance behavior" to describe employees that do not want tow and avoid it.  Plaintiff  was exposed to discrimination that occurred within David Pratt's team that not only belittled employees but took the view that they need to find another job and that was their only option otherwise they better start typing.  Plaintiff believes that a mistrust of employees took control of the culture and repetitive motion injuries and mental health conditions were viewed as avoidance behaviors not valid and not worthy of the protections the ADA provide it.

The issue went uncorrected and eventually adopted itself as standard policy and way of doing business.  Plaintiff challenged this and it resulted in retaliation and unfair

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

expectations and discriminatory conduct towards Plaintiff that eventually resulted in his termination.

**B.   Discrimination at Apple**

A manager that reported to David Pratt shared with her team that:

"A lot of these advisors "claim" to struggle helping multiple customers at once and ultimately boils down to being pushed to do so.  I had 3 advisors claiming a medical condition flare up with helping multiple customers which was followed up with the tough conversation about "is this the right role for you".  (see Arebalo decl. Ex A at ARE00587)

David's direct reports even belittled employees with carpal tunnel (employees without carpal tunnel or stress related disabilities did not get subjected to ridicule) sharing photos of a "finger massager" and proclaiming, "I found what our Advisors need for finger pain!"  (Arebalo decl. Ex A at ARE00616)  The comment reflects the frame of mind of management at the time and the basis for Plaintiff's initial complaint.

David Pratt even testified that "there was a period of time where a lot of comments were coming from all different directions" (Pratt Depo, at 72:1-9).

Employees were being denied the Interactive Process and Reasonable Accommodations  (Arebalo decl. Ex A at ARE00900 – ARE00926), their issues being dismissed and labeled "avoidance behaviors".   Plaintiff continued to uncover issues including the intentional removal of information to prevent future injury from repetitive motion from Apple's internal ergonomics website.  (Arebalo decl. Ex A at ARE00523)  Stretch breaks are extremely important to prevent Carpal Tunnel which is a disability that can result from the repetitive motion of typing, an injury that was frequently occurring in Apple's new Chat line-of-business at such a rate that a new position had to even be created to manage the amount of leaves and disabilities under the role title "AppleCare Leaves Team Manager".  The removal of information was of concern to Plaintiff because he had carpal tunnel and understood the benefits of preventing the injury.  The information that

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Case No.  5:19-cv-03034-EJD

was removed was critical to preventing early onset of Carpal Tunnel which Plaintiff developed early on due to his time in the Navy where he worked a largely administrative support role.

The information that was recommended on Apple's internal Ergonomics website was smart information and was posted by very smart people.  Management requested the smart information be hidden to prevent employees from "socializing" breaks every 45 minutes to keep the cost of the Chat tool down.  Apple chat employee's schedule sometimes went over 2 hours without a break which was in strict contrast to the smart recommendation regarding stretch breaks.

Plaintiff met with Justin Bishop and Casey Nugent some time before June 2017 and complained about the removal of the information.  Plaintiff made the request that the scheduling department implement the breaks into chat employee schedules the stretch breaks in-order to prevent injury.  Plaintiff was told by Justin Bishop that this was "too complicated".  David Pratt then removed scheduling department projects from Plaintiff's responsibilities and on Plaintiff's Performance Review made the false claim  that Plaintiff failed his projects as they related to the scheduling department.

### B.    Apple's Description of Plaintiff's Performance is False and Misleading

Plaintiff did not fail any scheduling projects, he was retaliated against for his push back regarding stretch breaks not being incorporated into employee schedules.  Defendant provides no evidence of project deadlines failures, just conclusory statements.  Plaintiff's performance was held to standards and policies it did not enforce and expect from other similarly situated employees that reported to David Pratt (See Arebalo decl., at ARE00484).

Plaintiff even has a declaratory statement (1) David Pratt met with other direct reports and granted "Exception Requests" monthly while never once meeting with Plaintiff to perform an exception request (2) allowed other similarly situated employees freedom to document into Apple's document portal without restrictions, able to cram comments in at the end of the month if so desired (3) prevented Plaintiff from moving to another Area

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Manager (4) allowed other direct reports to assume a Tier 1 position to accommodate their failing performance, but did not provide the same to Plaintiff (5) gave notice and provided for professional development opportunities with Justin Bishop to David Pratt's direct reports at least twice between June 2017 and December 2017, but not Plaintiff (6) issued Plaintiff a Misconduct Violation for not updating his address in the MyPage directory while not issuing Misconduct Violations to the hundreds of other employees that failed to do this timely (7) told Plaintiff his opinion was not valued while allowing for the opinion of others on the team to be heard (Arebalo decl. Ex A ARE00494 & ARE00492)  (8) allowed others to perform Historical Edit when an employee was underpaid but terminated Plaintiff (pretextually) when errors occurred (see Lehman Decl.) (9)  Historically Apple subjected Plaintiff to unequal expectations only after Plaintiff's first complaint of discrimination to Justin Bishop and Casey Nugent as it related to information being withheld to prevent an injury.

David Pratt and Apple continues this pattern of discrimination even in this Motion claiming that Plaintiff's previously rated performance by Sherry Gonzalez, who scored Plaintiff as an "Achieved Expectations" does not mean, what Apple originally said it means.

Apple defines the rating of Achieved Expectations for performance that "Consistently performed at the highest level expected for the role".  Defendant and David Pratt now attempt to claim that Plaintiff's performance "Did not consistently perform at the highest levels expected for the role." which is in direct opposition to what Sherry Gonzalez rated Plaintiff's performance as.  David Pratt also misled this Court under oath that Plaintiff's movement to the Tier 2 Team Manager role was just simply the result of new head count.  It was not.  (see Arebalo decl. Ex A at ARE00587)

At some point between February of 2017 and June of 2017, Plaintiff's relationship with David Pratt took negative turn.  David Pratt became harassing, untrusting, and hyper-critical of Plaintiff's performance.  David Pratt criticized Plaintiff while allowing other direct reports to perform the exact same behaviors unimpeded.  Plaintiff met with Chris

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Gibson to understand if Chris, who did not have carpal tunnel, was being disciplined for any of the various issues that Plaintiff had received discipline for, he was not.  This is evidenced in the patterned work results of Chris Gibson that document:

> Chris Gibson performed 5, 1-hour long coaching sessions in a matter of 15 minutes in period 09

> Documented 24% of his coaching comments in the last 48 hours of the month in period 09

> Chris completes four 1-hour coaching sessions, all with comments entered within minutes of one another in period 10

> (Arebalo decl. Ex A at ARE00615)

Justin Bishop gave varying and opposing answers during his deposition too.  When asked "Do you – when you meet with employees – at the time, did you take notes or write notes contemporaneously?

Justin answered, "Yes" and when asked where those might be he stated, "In Notes on my computer – the actual "Notes" application."

And, later in the Deposition when asked again, "What – if I were to ask for these notes, what category or what application – what would I be asking those to be searched in and extracted from?"  (Justin depo 23:14-19 & 46:18)

Justin replied to this line of questioning with "Yea.  I was not a big note-taker , so they probably don't exist. If they did, you would look for my portable that I turned in when I was – when I quit and the notes on my user."

At no time did David Pratt ever sit Plaintiff down and say words to the effect of, "Josh if your performance doesn't improve in this manner, you are going to lose your job before Christmas."  But, Plaintiff saw that David was politely attempting to make work for Plaintiff unbearable by constant criticism of performance and unfair expectations.  In fact, David Pratt sent Plaintiff more emails about David being late or not being able to attend a One on One session with Plaintiff as planned, than David Pratt sent Plaintiff as it relates to concerns. (see Arebalo decl. Ex A at ARE00608, ARE00476)

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Case No.  5:19-cv-03034-EJD

## III.   LEGAL STANDARD

Summary judgment is not to be granted simply because a case is "weak" or because a "weak" showing was made in opposition. (*Hagen v. Hickenbottom* (1995) 41 Cal.App.4th 168, 187-188, superseded by statue on another point as recognized in *Rice v. Clark* (2002) 28 Cal.4th 89,96; *Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 289, 722. ["to avoid summary judgment a showing need not be strong; it need only be sufficient to raise a triable issue of fact."].)

## III.   LEGAL ARGUMENT

A "defendant moving for summary judgment must show the plaintiff's causes of action have *no merit*." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849, emphasis added.) In other words, summary judgment is not to be granted simply because a case is "weak" or because a "weak" showing was made in opposition. (*Hagen v. Hickenbottom* (1995) 41 Cal.App.4th 168, 187-188, superseded by statute on another point as recognized in *Rice v. Clark* (2002) 28 Cal.4th 89, 96; *Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 589, 722. ["to avoid summary judgment a showing need not be strong; it need only be sufficient to raise a triable issue of fact."].

### A.   Plaintiff's Complaint is not Time Barred

Defendant states that Plaintiff's charge was filed late with the EEOC, outside of the May 29, 2018 deadline, just not true.  This case is not time barred.  Plaintiff timely filed the charge with the EEOC on April 13, 2018.  Plaintiff was required to wait until June 11, 2018 for the phone interview.  The claim is not time barred and furthermore, Plaintiff timely filed with in the 90 days required after being issued a right to sue letter.

### B.   Plaintiff was subject to differential escalating treatment

After Plaintiff met with Justin Bishop to complain about the stretch breaks being removed from the ergonomics website, Plaintiff had projects removed, and a "Did not Achieve" rating on his performance evaluation.  Yet, David Pratt does not speak critically of Plaintiff's performance during the months leading up to the end of the review period,

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

May 31, 2017. The most critical statement David Pratt makes is one that simply encourages the Plaintiff to spread coaching throughout the month.

Month over month though David Pratt subjects Plaintiff to narrowing or unequal expectations. David Pratt often allows Chris Gibson to perform worse than Plaintiff, only to criticize Plaintiff at any perception of lack of performance (Arebalo decl, at ARE00444).

**B.  A Totality Of The Circumstances Gives Rise To Retaliation and the Prima Facie Claim**

Courts "need not ... decide whether each alleged retaliatory act constitutes an adverse employment action in and of itself," but instead must evaluate whether the "totality of the circumstances" of a "pattern of systematic retaliation" "is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion." (*Id.* at 1055-1056.) *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028 [32 Cal.Rptr.3d 436].

David Pratt never once criticized Plaintiff's performance from the period of February 2017 through June 2017. Apple has not produced any documentation that supports this and in fact the documentation that is available suggests completely different situations transpired. For example, David Pratt's Annual Performance Review criticizes Plaintiff for coaching documentation not completed in a timely fashion. .Except in Plaintiff' QPR documentation for that same period these deliverables were entered late due to an encroaching natural disaster which David Pratt even acknowledges.

**C.  Defendant Offers No Evidence Of Alleged Concerns In April 2017 Prior To Plaintiff's Complaint To Justin Bishop**

Defendant looks to *Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 353-54 (2008) in explaining that causation based on temporal proximity is greatly undercut where the employer raised question about the employee's performance before he disclosed the alleged disability. Apple fails to offer any evidence that the concerns in April (1) even exist outside of conclusory statements (2) the subsequent discharge was based on the performance issues from April.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

### D.    False Exculpatory Statements

Courts have found that a false exculpatory statement about a matter reflects the speaker's consciousness of guilt.  In turn, the existence of that presumed guilt "*creates an inference* unfavorable to the guilty party. And, that inference, by itself, is enough to defeat summary judgment.  *Donchin v. Guerrero*  (1995) 34 Cal.App.4th 1832 [41 Cal.Rptr.2d 192].

Justin Bishop left Apple just two months after Plaintiff was terminated, and at the conclusion of the Decision Review investigation.  Sometime in October of 2020, Justin Bishop was served a subpoena to testify in this matter.  Several days after receiving notice of the subpoena, Justin removed Digital Crickets, a Podcast series of about 6 episodes he created and hosted on nearly a dozen websites.

Justin's spoilation of evidence may have prevented Plaintiff discovering relevant facts in this case.  Not all was lost however, just days prior to Justin removing the information from the World Wide Web, Plaintiff was able to find and review some of the Podcasts and capture the substance of them, here is part of one:

"… there will be wide speculation as to whether or not I was crazy the whole time I was there." , "Apple lawyers. Okay. I hereby proclaim. Absolutely. There was no time at my employment during Apple, Inc. That I was in any case mentally disturbed, knowingly, mentally compromised, nor should any of my decisions be regarded as anything, but the best decisions possible." , "It's going to be a podcast dedicated to vulnerability. I'll tell you that much, but there's going to be some cards.  I keep close to my chest, a little games that I'm going to play and for those of you who don't think I'm capable of this, ask the AppleCare advisers who knew me well, they know what I can do.  All right. I will never apologize for anything.  You think I'm a racist? Do you think I'm a bigot? You think I'm a misogynist you're probably right. You think I've got a mental disorder?  I'm going to agree with you. In fact, the funnier you

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

described the mental disorder that I've got, the more I'm going to like it.  I ain't your friend. I'm a super villain. All right. Uh, we are not dedicated to harming anything, us crickets, just mischief, which want to poke fun at these systems of social organization and see how they respond."

### E.   Apple's Reason For Termination Is False And Is Affirmative Evidence Of Guilt

Apple states that for non-retaliatory legitimate business reasons it terminated Plaintiff.  If that were true then David Pratt would not have needed to obfuscate exculpatory facts previously provided by Plaintiff to facilitate the termination and to commit fraud on the Request for Discipline form by documenting information David Pratt knew to be false. (Pratt decl., 83-85)

On November 28, 2017, David Pratt performs a random audit of Plaintiff's timecards after the previous months audit revealed "No discrepancies".  David Pratt set the expectation to review attendance weekly in October 2017 stating  "it is critical to review attendance weekly in order to take action"  David Pratt's remarks came after David Pratt noted several issues that required "Merlin Corrections" – what Plaintiff was terminated for – but other similarly situated employees in October 2017 were not terminated for the exact same performance issues.  (see Arebalo decl. Ex A at ARE00564

In the weeks leading up to November 28, 2017 therefore pretext .  This is entirely untrue.  The Declaration of Heather Lehman (Lehman decl.), a former direct report of David Pratt's, similarly situated without carpal tunnel, states that she often had to submit timecard corrections due to errors because the responsibility of timecards was that of the Advisor not the Supervisor.   Heather was never disciplined by David Pratt for any timecard errors that occurred and Heather states that she often would enter her coaching comments without criticism from David Pratt at the end of the month stating that "it was something that everyone was continually trying to do better at."

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Case No.  5:19-cv-03034-EJD

Kimberly Bertholet, hand selected by David Pratt to be a timecard and attendance expert, even states "Please work with your TM to understand the AHA Guidelines and Advisor responsibilities for timecard accuracy.  If you need to make any historical edits, please let me know and submit through MyPage." (Arebalo decl., at ARE00532) and that unless the employee provides the information that, "I haven't received this information from you as of yet." (Arebalo decl., at ARE00534)

Apple deviated from the standard business policy set in the AppleCare At-Home Advisor guidelines (AHA Guidelines) in order to terminate the Plaintiff.  The AHA Guidelines are a set of business policies and include the practice of recording time worked at Apple.  The policy states very clearly that, "You [Advisor] are responsible for accurately recording all time worked on your timecard."  (Arebalo decl., at ARE00460)

This business practice is echoed by Kimberly Bertholet who states "We will be holding Advisors accountable on these requests as keeping accurate timecard records is part of the AHA guidelines." and that supervisors should, "go over in your team meetings the expectations for Advisors on reporting timecard corrections in a timelines manner." (Arebalo decl. Ex A at ARE00407 – ARE00420)

Plaintiff is aware of this same policy and on November 2016 writes an email to a direct report echoing the same, "Thanks for taking the time to try to review it [timecard] and know I can make changes up until midnight CST on Saturday, all managers can but the closer we get to midnight, if a network or system issue occurs well, you know what can happen, so always best to review daily."

In fact, Plaintiff, throughout his entire time supervising at Apple, submitted a total of over 30 historical timecard edits to resolve underpaid employees prior to November 28, 2017, and never received discipline, criticism, or any other negative feedback related to the practice prior to David Pratt's terminating Plaintiff.  (Arebalo Decl.)   Each of Plaintiff's previous Area Managers, allowed for historical edits as well without discipline, Sherry Gonzalez and Faisal Ali. (see Arebalo decl. Ex A at ARE00601)

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Case No.  5:19-cv-03034-EJD

1    Furthermore, David Pratt's misconduct violation hinges on the argument that

2    Plaintiff failed to properly update his address (Since he already had approval).   But,

3    AppleCare operations reminded employees to "Update your Contact Information by going

4    to the MyInfo tab on MyPage" (Arebalo decl., at ARE00605) yet these employees did not

5    receive any discipline and kept their jobs.

6    Plaintiff bears the initial burden to establish the elements of a prima facie case. See

7    *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802; accord *Matthews v. Ocean Spray*

8    *Cranberries, Inc.,* 686 N.E.2d at 1312- 14. The rather minimal showing functions to raise

9    an inference of discrimination. *Tex. Dep't of Community Aff. v. Burdine*, 450 U.S. 248,

10   253-54 (1981). Once this inference is established, the burden of production shifts "to the

11   employer to articulate some legitimate, non-discriminatory reason" for the employment

12   action. *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802; accord *Matthews v. Ocean*

13   *Spray Cranberries, Inc.,* 686 N.E.2d at 1312-14. If this intermediary burden of production

14   is satisfied by the defendant, the plaintiff gets a "fair opportunity to show that [the

15   defendant's] stated reason" is pretextual. *McDonnell Douglas Corp. v. Green*, 411 U.S. at

16   804; accord *Matthews v. Ocean Spray Cranberries, Inc.,* 686 N.E.2d at 1312-14.

17   Accordingly, "the plaintiff bears the 'ultimate burden of persuading the trier of fact that

18   the defendant intentionally discriminated against the plaintiff.' " *Gu v. Boston Police*

19   *Dep't*, 312 F.3d 6, 11 (1st Cir. 2002) (quoting Tex. Dep't of "The most probative means

20   of establishing that the plaintiff's termination was a pretext for racial discrimination is to

21   demonstrate that similarly situated white employees were treated differently."

22   Similarly situated employees without carpal tunnel, like Heather Lehman, did not

23   get terminated by David Pratt.  (Lehman Decl.)  David Pratt just the prior month before

24   Plaintiff's termination, notified his direct reports stating that the exact same issue Plaintiff

25   was terminated for was occurring in October 2017 for others on David's team.  David

26   Pratt did not terminate any other similarly situated employee that reported to David Pratt.

27   David sent an email to the Team and this is memorialized in several emails documenting

28   misses with timecards and attendance:

19

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

1    "Even after payroll ended, we have way too many that either need a warning or
2    correction in Merlin." (Arebalo Decl., at ARE00422.)

3        Most interesting to note is that Plaintiff's performance with timecards for the same
4    period in October that was criticized by David with the comment above, was reviewed by
5    David Pratt in a "spot-check" audit of Plaintiff's timecards.

6        David Pratt found "no discrepancies" following with, "Thank you for taking the
7    time to confirm the accuracy of the punches."

8        During the timecard review meeting in October 2017 David Pratt shares with
9    plaintiff that he could review timecards just as Plaintiff had been performing, at the end of
10   week 2 prior to the closing of the timecard approval window of Saturday midnight CST.
11   Plaintiff reminds David Pratt of this later in November when Plaintiff asks David Pratt to
12   clarify the conversation because there appeared to be a misunderstanding regarding the
13   expectation.  David Pratt does not reply.

14       David then goes on to discuss Attendance, which is a separate issue but related to
15   Timecards.   David documents that "Going forward, I expect a weekly review (at the
16   minimum) of occurrences and I expect you to promptly make a request for warning." ,
17   "We MUST assertively address negative trends in attendance or the advisor will continue
18   to miss work." (Arebalo decl. Ex A at ARE00472.)  This assertion that Timecards and
19   Attendance are separate tasks is echoed in a Survey that Plaintiff sent to Apple Managers
20   asking if indeed, these could be separate tasks and the results showed that they are
21   separate. (Arebalo decl. Ex A at ARE00900)

22        The statement "We MUST assertively address…" is important because it appears
23   David Pratt drafts the Documented Coaching for Plaintiff in October 2017 continuing the
24   conversation.  Plaintiff relies on the importance and urgency David expresses and plans
25   accordingly to accomplish the request.

26        The Documented Coaching states no where on it, the word "Timecards".  When the
27   Documented Coaching is viewed in light of David Pratt's comments from October 2017
28   regarding Attendance, it is clear that David Pratt meant for Plaintiff to focus on

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

1   Attendance and that David Pratt stated reason of "timecards" was pretextual. This is why

2   David Pratt never clarified with Plaintiff about his understanding related to completion.

3       David Pratt ignores exculpatory documentation provided by Plaintiff that explains

4   why Plaintiff did not deliver the misconduct violation – because the employee was sick or

5   out of town.  Numerous documents provide evidence to support this too.  (Arebalo decl.,

6   at ARE00566, ARE0565, ARE00563, ARE00558, ARE00557, ARE00553).

7   **F.    Apple admits it failed to accommodate and engage in the interactive**

8   **process**

9       In *Prilliman v. United Air Lines, Inc.,* supra, 53 Cal.App.4th at pp. 950-951, the

10  court put the burden of notifying the employer of disability on the employee but then put

11  the burden of determining whether an accommodation was needed and could be found on

12  the employer; it held that the duty to make a reasonable accommodation requires

13  employers to *offer appropriate alternative positions even where seemingly disabled*

14  *employees themselves do not request such accommodation:* "[A]n employer who knows of

15  the disability of an employee has an affirmative duty to make known to the employee

16  other suitable job opportunities with the employer and to determine whether the employee

17  is interested in, and qualified for, those positions, if the employer can do so without undue

18  hardship or if the employer offers similar assistance or benefit to other disabled or

19  nondisabled employees or has a policy of offering such assistance or benefit to any other

20  employees."

21      David Pratt offers no alternative options to Plaintiff regarding future issues related

22  to his disability.  Apple admits that the only offer provided was for Plaintiff to not work

23  and take a Leave of Absence.  (ECF 45-2, 90)

24      David Pratt replied to Plaintiff's notification of disability in June 2017 with a single

25  reply, "You cannot use that as an excuse."  David Pratt even leaves Plaintiff's reasoning off

26  of a Coaching form when he simply does not finish the sentence.  (Arebalo decl. Ex A at

27  ARE00609)

28      David Pratt's testimony directly contradicts his own coaching comments as they

21

relate to "fires".  David Pratt states that Plaintiff told him he had many "fires" but David Pratt could not identify what those fires were.  That is because, as David's Comments reveal, David is the one who asked Plaintiff if he had "fires" that impacted his planning for the period, to which Plaintiff replied that his "Capral Tunnel" influenced his schedule most. David's response was that he was not going to accept it, and although David Pratt was always polite, he was wrong nonetheless.  (Arebalo decl. Ex A at ARE00609.)

Further, David Pratt deviates from standard policy of exploring the options available for a reasonable accommodation as part of the interactive process when he limited Plaintiff's options to only a Leave of Accommodation for future issues related to Plaintiff's carpal tunnel was available, essentially Plaintiff had to lose money.  Apple's standard practice though is quiet different and it is a standard templated process.  The offer is a templated statement created by Apple HR and found below:  (Arebalo decl. Ex A at ARE00501)

"Should you need more rest time outside of the time provided by Apple, or have other needs outside the scope of what we can provide please know or consult the resources available to address needs outside of what is provided currently:

(1)  Apple's Leave and Disability administrator:  1-855-70apple and https://hrweb.cdn-apple.com/US/en/subtopic/132

(2)  Apple's Employee Assistance Program: http://www.concern-eap.com and https://hrweb.cdn-apple.com/US/en/subtopic/9

(3)  Again, the Reasonable Accommodation process on HRWeb at https://hrweb.cdn-apple.com/US/en/subtopic/230

(4)  And, CONCERN is another great resource that can be found at

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Case No.  5:19-cv-03034-EJD

HRWeb too."

The template attempts to overcome and prevent discrimination from occurring by ensuring that the interactive process invites and involves each of the available options. David Pratt does not include options for Plaintiff. David Pratt limits Plaintiff to not working by taking a leave of absence.

### G.   Despite Defendant's Discriminatory Intent But-For, Should Be Determined By A Jury

As the California Supreme Court later elaborated in *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, determining whether the defendant would have fired the plaintiff anyway (i.e., despite the defendant's discriminatory intent) is for the jury to resolve with the defendant required to carry the burden of proof.

### Apple obfuscates, hides, or otherwise lies and is unreliable

David holds that he did not prevent Plaintiff from moving to another Area Manager, stating that Faisal Ali prevented the move and that Plaintiff wasn't barred or held back by the Action Plan put in place by David Pratt. Except, David Pratt's reply to Plaintiff's request reveals that David Pratt indeed was controlling the move. (Arebalo decl. Ex A at ARE00800)

### H.   California's Long-Arm Jurisdictional Statue Is Coextensive With Federal Due Process Requirements

California's long-arm jurisdictional statute is coextensive with federal due process requirements, *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (citing Cal. Civ. Proc. Code § 410.10), the two inquiries merge allows this Court to determine whether the assertion of personal jurisdiction over the Defendant violates the Due Process Clause. *See Rocke v. Canadian Auto. Sport Club,* 660 F.2d 395, 398 (9th Cir. 1981).

Accordingly, jurisdiction is proper over a nonresident defendant "if the Defendant has certain minimum contacts with California such that the maintenance of the suit does

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted).

Under this analysis, a state may exercise either "general" or "specific" jurisdiction over a defendant. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984).

**1. Jurisdiction**

For general jurisdiction to exist over a nonresident defendant, the defendant must engage in "continuous and systematic general business contacts," Helicopters, 466 U.S. at 416 (citation omitted), that "approximate physical presence" in the forum state. *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

Plaintiff, in order to perform any work related activities, was required to use AppleConnect. AppleConnect is Apple's VPN software allowing Plaintiff, a remote employee, to work "on-site" using the tools and resources available in Cupertino at the corporate offices of Apple as if he were local.  David Pratt and Justin Bishop had to perform the same tasks of utilizing the VPN and being on "Apple's Network" in order to complete their job duties'   David Pratt and Justin Bishop, both non-resident Defendants, using AppleConnect, purposefully conducted their activities directed at the state of California and therefore availed themselves of the privilege of conducting activities in the State of California and thereby invoked the benefits and protections of its laws.

Defendant's acts were purposeful and interjected into California.  Keeping the forum makes sense in regards to judicial economy as well. provides judicial economy, does not conflict with resident states.  It simply makes sense to both the State of California and the Defendant and Plaintiff to keep the forum as California will have the largest interest in adjudicating the dispute, especially at this juncture of things

Furthermore Plaintiff was terminated using a video communication service hosted by Apple and accessed via their VPN which directed traffic to Cupertino, California.

**CONCLUSION**

24

The facts that need to be decided and the concepts and questions presented by the complexity of this case as well as the numerous employees that are affected by it demands that a tiar of fact be established in order to hear and decide the merits of this case.  For the reasons stated above, this case deserves to be heard and deserves the judgment of a jury.


Dated:  February 19, 2021

PLAINTIFF

_____/s/_____

JOSH AREBALO

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Case No.  5:19-cv-03034-EJD

*CERTIFICATE OF SERVICE*

CASE: *Josh Arebalo v. Apple Inc*.
CASE NO.: USDC-NDCA 5:19-cv-03034-EJD

I, Josh Arebalo, Plaintiff and party to this matter on February 19, 2021, served the attached document(s):

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

in this action by sending via electronic mail a true and correct copies thereof, addressed as follows:

Mitchell F. Boomer, Esq.
Scott P. Jang, Esq.
Atticus Lee, Esq.
JACKSON LEWIS P.C.
50 California Street, 9th Floor
San Francisco, CA 94111
E-mail:         scott.jang@jacksonlewis.com
E-mail:  yuki.cruse@jacksonlewis.com
E-mail:  lauretta.adams@jacksonlewis.com

[ X ] BY ELECTRONIC TRANSMISSION: I caused such document(s) to be electronically transmitted to the above email address (by written agreement, confirming letter dated and signed 02/19/2021).

Executed on February 19, 2021 at San Francisco, California.

_____

Josh Arebalo

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Case No.  5:19-cv-03034-EJD